OPINION OF THE COURT
Edward J. Greenfield, J.
Is New York an appropriate forum for a lawsuit against Singapore Airlines in which it is alleged that that Malaysian corporation negligently permitted Palestinian armed terrorists to embark on its flight from Bahrein to Athens, without proper search, so that they were able without further search to board an Air France plane which was making an intermediate stop in Athens on a flight from Tel Aviv to Paris, which plane the terrorists hijacked to Libya and then to Entebbe Airport in Uganda, the locale of the celebrated Israeli rescue mission of July 4,1976? Although New York has no readily apparent nexus with these operative facts, under the circumstances here presented, this court concludes that it is a proper forum, and will deny the motion by defendant Singapore Airlines, in which defendant Gulf Air has joined, to dismiss the action pursuant to CPLR 327 on grounds of forum non conveniens.
While the defendant airlines had no direct relationship with the plaintiffs, who were not passengers on their planes, it does not follow that defendants could not be *176 found liable for breach of any duty to them. The world of air travel is a world of interconnections, and demonstrated negligence in one part of the world may well result in consequences elsewhere that are well within the ambit of foreseeability. It is alleged that the failure of the defendants to conduct a proper pre-embarkation search in Bahrein enabled a group of terrorists to board their planes fully armed and to change planes in Athens, boarding the Air France plane without any further check. Thus, it is alleged, the terrorists were enabled to hijack the Air France plane in Europe and force it to land first in Libya and then in Entebbe Airport in Uganda. The passengers were then held hostage until liberated in a dramatic commando raid and flown to Israel. Such injuries as were allegedly sustained by the passengers were incurred in Libya and Uganda.
The passengers on the Air France plane were a mixed group of French, English, Israelis, Canadians and Americans. Of the 95 passengers, 2 sued Air France in Paris and their cases were dismissed on the gounds that Air France had violated no duty owing to them. The other 93 claimants originally brought their suit in Illinois, but when their case was dismissed against Air France (People ex rel. Compagnie Nationale Air France v Gilberto, 74 Ill 2d 90) they chose to pursue their claims against Singapore Airlines and Gulf Air in New York. Six of the plaintiffs are American, four of whom reside in New York, one in Connecticut and one in California. Each of them will be witnesses in the case, and other witnesses will have to come from Bahrein, Israel, Greece and Uganda. Extensive discovery proceedings have already taken place in New York in several of these cases.
Defendants Singapore Airlines and Gulf Air have argued that New York is not the appropriate forum and have suggested as an alternative a trial in the United Kingdom. This court is not persuaded that that is a better forum for determining the responsibility of the defendants.
While four of the plaintiffs are New York residents, the earlier rule as enunciated in de la Bouillerie v de Vienne (300 NY 60, 62), that forum non conveniens could be invoked only as between nonresident litigants has been *177 relaxed by the decision of the Court of Appeals in Silver v Great Amer. Ins. Co. (29 NY2d 356). The controlling considerations, declared the court, should be justice, fairness and convenience, in which case, the court is to consider not only residence, but (p 361) “all the pertinent competing situations”, as set forth in Varkonyi v S. A. Empresa De Viacao Airea Rio Grandense (Varig) (22 NY2d 333). These criteria include the burden of imposing the particular litigation on the New York courts, the requirement of the application of foreign law, the possible hardship on the defendant of litigating in this forum, the extent to which the plaintiffs’ interests might be served by pursuing the claim in this State, the convenience of witnesses and the existence of special and unusual circumstances such as the unavailability of any other forum in which the plaintiff might obtain effective redress. All these factors are to be considered in addition to the question of whether or not any of the plaintiffs are residents of New York. As noted by Judge Keating in his concurring opinion (p 339): “the doctrine of forum non conveniens presupposes the existence of a second more convenient forum”. He declared (pp 341-342): “Essentially two questions present themselves in every case involving suits between nonresidents on causes of action having no significant nexus with this State. The first is whether, despite the general policy considerations which militate against burdening the courts of this State with such actions, the circumstances are such that the interests of justice or other significant policy considerations warrant the retention of jurisdiction. The second consideration is whether — assuming the case is one of the kind described above — it is practically more feasible to try the action here rather than in another jurisdiction. With respect to this aspect of the problem it has been held that ‘unless the balance is strongly in favor of the defendant, the plaintiff’s choice of forum should rarely be disturbed’. (Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 [1947]; Bata v. Bata, 304 N.Y. 51 [1952]).”
Given the international character of this case, and the many countries which were tangentially or directly involved, there is no one readily apparent forum in which this case could best be tried. With Air France out of the *178 case, the French courts no longer have any connection with it. No jurisdiction could be obtained over these defendants in Israel. The rights of the Israeli passengers could not rightfully be tried in Arab States like Bahrein or Libya. Singapore, the home base of one of the defendants, is more remote from the operative facts of this case than any other jurisdiction. Greece and Uganda are not the forums of choice for anybody. There are a limited number of forums in which the defendants are suable. These are New York, the United Kingdom and the Bahrein. There aré obvious drawbacks with respect to each such possible forum. Under those circumstances “[t]he burden of proof on the issue is upon the party who challenges the maintenance and continuation of the suit in this State. The party who seeks to invoke forum non conveniens to effect dismissal of the action and eventual transfer to another jurisdiction must clearly establish that New York is an inconvenient forum and that another is available and will best serve the ends of justice and the convenience of the parties.” (Bader & Bader v Ford, 66 AD2d 642, 645.)
With respect to a choice of forums as between New York and England, the court observes that none of the parties reside there while four reside in New York and two elsewhere in the United States. Singapore Airlines, which has an office at 535 Fifth Avenue in New York City, and which handles a major portion of its financing and purchasing in New York, operates in 25 countries (not including Israel where most of the passengers reside). Operating an international airline, it must deal with the ever present possibility that it could be subjected to a suit in any one of the 25 countries to which it flies. There is no indication that a British court would be more at home in applying the applicable law than with an American court. The applicable standard of care with respect to security precautions and the screening of passengers is set forth by the International Civil Aviation Organization located in Montreal. Its standards, which have been subscribed to by almost all countries are universally applicable, and can be determined as readily in the United States as elsewhere.
It should be noted that there is a marked contrast between English and American practice with respect to *179 pretrial discovery. In England, discovery is limited to documents. Plaintiffs point out that under English practice, they would not be able to obtain depositions from foreign witnesses and Air France, which is no longer a party, could not be subject to pretrial discovery. Without such right to pretrial depositions, plaintiffs contend they could not make out a case and thus argue that to have the case litigated in England “is to sound the death knell to plaintiffs.” New York, of course, affords broad pretrial discovery, both of parties and of witnesses, and provides for the use of foreign depositions in our trials. Thus, not only is New York practice more conducive to elicitation of the truth, but extensive pretrial discovery proceedings have already taken place in New York. In the interests of justice, as well as on a practical basis, all the indicia point to New York rather than the United Kingdom as a more appropriate forum.
It is true that because of the international scope and sweep of the events here involved, witnesses from Bahrein, Greece, Israel, Libya and Uganda may have to testify. There is no readily apparent reason why a trial in the United Kingdom would be any more convenient than one in New York. If they are to appear in person, they can fly to New York or to London with equal facility. If they are to appear through deposition, the New York courts will more readily receive their testimony. Plaintiffs’ counsel have pointed out, somewhat to the surprise of the court, that air transportation from Athens to New York, or from Tel Aviv to New York, is actually less than comparable fares to London. In any event, the rendering of full justice to the parties should not turn on whether incidental travel expenses for witnesses are a few dollars higher or lower.
We have a situation then in which the plaintiffs, including residents of New York, have chosen New York as the forum and extensive legal work has already been performed here. There would appear to be no compelling reasons to prefer some other forum as being more appropriate. Special and unusual circumstances which warrant this court retaining jurisdiction have been shown. It has further been pointed out that New York has a particular interest in acts of international terrorism and airplane *180 hijacking. New York is one of the principal world centers of air travel and passengers embark here for flights all over the world. Virtually all the American plaintiffs as well as most of the Canadians must have left this continent for their fateful overseas adventure from New York. Up to 12 million passengers annually leave from JFK Airport on international flights. It was United States security officials, who, based upon their experience with many of the hijackings in this country and elsewhere, developed the basic standards for airport security which are here involved. The United States has a continuing interest in seeing to it that any airlines carrying Americans on international flights comply with universally accepted standards of safety. This is not the first case in New York courts involving international events which took place thousands of miles from here, nor will it be the last. This court, under all applicable criteria, exercises its discretion in favor of retaining the lawsuits already commenced.
The companion motion to consolidate the Queens action of Peress v Compagnie Nationale Air France (Index No. 12965/76) with the action presently pending in New York County is granted and the claims in that case will be tried jointly with those here involved.
Settle order.